IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

YOUNG CHA OSHIRO,                )    CIVIL NO. 16-00157 HG-KSC
                                 )
          Plaintiff,             )
                                 )
     vs.                         )
                                 )
CAROLYN W. COLVIN, Social        )
Security Administration          )
Commissioner,                    )
                                 )
          Defendant.             )
_____  )


**ORDER REVERSING THE DECISION OF THE SOCIAL SECURITY ADMINISTRATION COMMISSIONER AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

     This case involves the appeal of the Social Security Administration Commissioner's denial of Disability Insurance Benefits to Plaintiff Young Cha Oshiro.

     On August 9, 2012, Plaintiff filed an application for Disability Insurance Benefits pursuant to Title II of the Social Security Act.  Plaintiff claims she has been disabled since April 29, 2012, due to Systemic Lupus Erythematosus ("Lupus").

     The Social Security Administration denied her initial application.  Following an administrative hearing, the Administrative Law Judge held that Plaintiff is not disabled

1

and found that Plaintiff is able to perform work in the national economy.

On appeal, Plaintiff argues that the Administrative Law Judge erred and requests a remand to the agency for further proceedings.  Plaintiff asserts that the Administrative Law Judge erred for three reasons.  First, Plaintiff argues the Administrative Law Judge erred by rejecting the opinions of her treating physicians.  Second, Plaintiff argues that the Administrative Law Judge improperly declined to credit the Plaintiff's testimony concerning the severity of her medical condition.  Third, Plaintiff asserts that the Administrative Law Judge erred by relying on the testimony of the vocational expert to find that Plaintiff could perform work as a Toll Collector.

The Court **REVERSES** the decision of the Social Security Administration Commissioner and **REMANDS** the case for further evaluation.

<u>**PROCEDURAL HISTORY**</u>

On August 9, 2012, Plaintiff Young Cha Oshiro filed an application for Disability Insurance Benefits with the Social Security Administration.  (Administrative Record ("AR") at 149-52, 162, ECF No. 17).

On January 23, 2013, the Social Security Administration denied Plaintiff's initial application.  (AR at pp. 88-91).

On August 21, 2013, the Administration denied her request for reconsideration.  (AR at pp. 95-99).

Following the denial of Plaintiff's request for reconsideration, she sought a hearing before an Administrative Law Judge ("ALJ").  (AR at pp. 101-07).

On July 14, 2014, an ALJ conducted a hearing on Plaintiff's application.  (AR at pp. 26-66).

On September 17, 2014, the ALJ issued a written decision denying Plaintiff's application.  (AR at pp. 12-21).

Plaintiff sought review by the Appeals Council for the Social Security Administration.  The Appeals Council denied further review of Plaintiff's application on February 12, 2016, rendering the ALJ's decision as the final administrative decision by the Commissioner of Social Security.  (AR at pp. 1-3).

On April 4, 2016, Plaintiff sought judicial review of the Commissioner of Social Security's final decision to deny her application for Disability Benefits in this Court pursuant to 42 U.S.C. § 405(g).  (Complaint for Review of Social Security Disability Benefits Determinations, ECF No. 1).

On August 4, 2016, the Magistrate Judge issued a briefing

schedule.  (ECF No. 20).

On September 30, 2016, Plaintiff filed PLAINTIFF'S OPENING BRIEF.  (ECF No. 22).

On November 9, 2016, Defendant filed DEFENDANT'S MOTION FOR A FIRST EXTENSION OF 30 DAYS TO FILE THE ANSWERING BRIEF. (ECF No. 23).

On November 10, 2016, the Court issued a Minute Order granting the Defendant's Motion for an Extension.  (ECF No. 24).

On December 14, 2016, the Defendant filed DEFENDANT'S ANSWERING BRIEF.  (ECF No. 25).

On December 27, 2016, Plaintiff filed PLAINTIFF'S REPLY BRIEF.  (ECF No. 26).

On January 17, 2017, the Court held a hearing on Plaintiff's appeal of the decision of the Social Security Administration Commissioner.

## BACKGROUND

**Plaintiff's Work History**

Plaintiff is a 56 year-old female.  (Administrative Record ("AR") at p. 162, ECF No. 17).  Plaintiff worked as a sewer at CC Fashion Hawaii from 1999 to 2011.  (Id. at p. 204).  Plaintiff also worked for a year as a janitor in 1998.

(Id.)  Plaintiff explained that as of 2011, she could no longer work the four to six hours a day that was necessary for her employment at CC Fashion Hawaii.  (Id. at pp. 34-35). Plaintiff testified that she required extensive breaks that did not allow her to work full-time.  (Id.)

Plaintiff testified that after 2011 she worked exclusively as a contract seamstress.  (Id. at pp. 35-36). Plaintiff had been self-employed as a contract seamstress since July 1987 and she stopped working in April 2012.  (Id. at pp. 31, 164).  Plaintiff testified that she performed sewing work that she received from a factory.  (Id. at pp. 35-36).  Plaintiff stated that she performed the work in her home and returned it to the factory when completed.  (Id.)

Plaintiff testified that she only worked three to four hours a day as a seamstress.  (Id.)  Plaintiff explained that she took frequent breaks throughout the day due to fatigue and pain caused by Lupus.  (Id. at p. 36).  Plaintiff explained that she took breaks for 30 minutes to an hour and that her condition varied from day to day.  (Id. at p. 35).  Plaintiff testified that there were some days when she could not work at all due to her condition.  (Id.)

Plaintiff stated that she stopped working in April 2012 because she could no longer perform the work within the

5

deadlines she was given by the factory.  (Id. at pp. 32-36).
Plaintiff explained that on a few occasions she had to return
the sewing work to the factory in an unfinished state because
she was unable to meet the deadlines due to her condition.
(Id. at pp. 35-36).

**Plaintiff's Medical Condition**

The record reflects that Plaintiff has been suffering
from Systemic Lupus Erythematosus ("Lupus") for a number of
years.  Plaintiff has been treated by two physicians, Dr. Paul
Kim, her primary physician, and Dr. Scott Kawamoto, her
rheumatologist.

Plaintiff provided records from her eight visits with Dr.
Kim between September 2011 and January 2014.  (AR at pp. 245-
47, 290-91, 300-01, ECF No. 17).  The treating records from
Dr. Kim are difficult to read but he provided a summary of
Plaintiff's condition in June 2014.  Dr. Kim stated that
Plaintiff suffers from Lupus and that it causes her to have
pain in her extremities and joints.  (Id. at pp. 400-03).  Dr.
Kim indicated that Plaintiff suffers from fatigue and requires
many breaks throughout the workday.  (Id. at p. 401).  Dr. Kim
stated that Plaintiff would be absent from work more than
three days a month due to Lupus.  (Id. at p. 402).

Plaintiff also provided records from her rheumatologist, Dr. Scott Kawamoto.  There are numerous reports of the visits she made to Dr. Kawamoto for treatment of her Lupus condition.

Between June 2011 and December 2011, Plaintiff was treated by Dr. Kawamoto, on three occasions for left ankle pain, swelling, and fatigue caused by Lupus.  (Id. at pp. 217, 220, 223).  Plaintiff was prescribed Hydroxychloroquine Sulfate and Celebrex to treat her inflammation and joint pain symptoms.  (Id.)

Between April 2012 and January 2013, Plaintiff was treated by Dr. Kawamoto three times for bilateral knee pain, pain in her back, neck, wrists, right shoulder, and left ankle, mouth sores, and fatigue due to non-restorative sleep. (Id. at pp. 226, 230, 275).

**The Social Security Administration's Review of Plaintiff's August 2012 Application For Disability Benefits**

Plaintiff's August 9, 2012 application for Disability Insurance Benefits was denied on January 23, 2013.  (AR at pp. 88-91, ECF No. 17).  Following the initial denial, Plaintiff moved for reconsideration.

While her Motion to Reconsider was pending, on March 3, 2013, Plaintiff went to the emergency room because she was experiencing abdominal pain.  (Id. at pp. 319-327).  She was

provided with medication to treat her pain and discharged the same day. (Id.)

Plaintiff pursued follow-up treatment with her primary care physician, Dr. Kim. Her symptoms returned three days later on March 6, 2013. Plaintiff went to the emergency room with stomach pain and dizziness. (Id. at pp. 328-350). She was admitted to the hospital and a scan revealed that Plaintiff had a benign tumor that caused her vertigo, dizziness, and nausea. (Id. at p. 329). Plaintiff was prescribed medicine to treat her nausea and dizziness and referred to her treating physicians for follow-up treatment. (Id. at pp. 328-29).

Plaintiff continued to make frequent visits to her treating physicians following her March 2013 hospitalization. (Id. at pp. 290-91, 300-01). Plaintiff's medical records reflect six examinations by Dr. Kawamoto from April to October 2013. (Id. at pp. 277, 361, 365, 368). The records indicate that Plaintiff continued to experience pain, aching, and fatigue. (Id.)

On August 21, 2013, the Social Security Administration denied Plaintiff's motion for reconsideration. (Id. at pp. 95-99). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at pp. 101-07).

In June 2014, both Plaintiff's treating physicians Dr.
Kawamoto and Dr. Kim provided Medical Source Statements to the
Social Security Administration.  (Id. at pp. 395-403).  The
Medical Source Statements provide information to the agency
about the Plaintiff's medical condition, physical limitations,
and her ability to work.  (Id.)

Both of Plaintiff's treating physicians agree that
Plaintiff suffers from Lupus.  Plaintiff's treating physicians
share the opinion that Plaintiff cannot walk or stand for more
than two hours in an eight-hour work day.  (Id. at pp. 395,
400).  Plaintiff's physicians state she cannot walk or stand
for more than 30 minutes at a time and cannot sit for more
than 30 minutes at a time.  (Id.)

Both Dr. Kawamoto and Dr. Kim agree that Plaintiff's
medical condition prevents her from working full-time.  Both
physicians stated that Plaintiff requires more than regular
breaks during an 8-hour workday.  (Id. at pp. 396, 401).  Both
of Plaintiff's treating physicians agree that Plaintiff would
miss more than three days of work per month because of joint
pain, swelling, and severe fatigue caused by Lupus.  (Id. at
pp. 397, 402).

On July 14, 2014, a hearing on Plaintiff's application
for Disability Benefits was held before an ALJ.  (Id. at pp.

26-66).

The ALJ denied Plaintiff's application for Disability Insurance Benefits, finding that Plaintiff had not met the requirements set forth in 42 U.S.C. § 423. (AR at pp. 12-21, ECF No. 17).

42 U.S.C. § 423 establishes the statutory eligibility requirements which an individual must satisfy to receive a disability insurance benefit pursuant to the Social Security Act. 42 U.S.C. § 423(a)(1). An individual is eligible to receive disability insurance benefits if the individual:

(A)     is insured for disability insurance benefits as determined by 42 U.S.C. § 423(c)(1);

(B)     has not attained retirement age;

(C)  has filed an application for disability insurance benefits; and,

(D)  is under a disability as defined in 42 U.S.C. § 423(d)(1)(A).

42 U.S.C. § 423(a)(1)(A)-(D).

The ALJ evaluated the four requirements of 42 U.S.C. § 423(a)(1).

First, the ALJ found Plaintiff was insured for disability insurance benefits pursuant to 42 U.S.C. § 423(c)(1). The ALJ determined that Plaintiff's earnings record showed that she had made disability insurance coverage payments. Based on Plaintiff's work history, the ALJ found that Plaintiff had

acquired quarters of coverage that will last until December 31, 2016.  (AR at p. 14, ECF No. 17).

Next, the ALJ found that Plaintiff fulfilled sections (B) and (C) of Section 423 because she had not reached retirement age at the time of her application and had properly filed an application for disability insurance benefits.

Finally, the ALJ sought to determine if Plaintiff suffered from a disability pursuant to 42 U.S.C. § 423(d).

42 U.S.C. § 423(d)(1)(A) provides, as follows:

> The term "disability" means— inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Plaintiff claimed that she was disabled for a continuous period following April 29, 2012, due to Lupus.  (AR at p. 187, ECF No. 17).

The Administrative Law Judge found that Plaintiff failed to establish that she had a disability that lasted or was expected to last at least twelve months following her alleged onset date of disability on April 29, 2012.  (Id. at p. 15).

The ALJ agreed with Plaintiff that she was not capable of performing her past relevant work as a seamstress.  (Id. at p. 19).  The Administrative Law Judge found, however, that there was work that existed in significant numbers in the economy

11

that Plaintiff could perform.  (<u>Id.</u> at pp. 19-21).  The Administrative Law Judge relied on the testimony of a vocational expert to find that someone with Plaintiff's limitations could perform work as a Toll Collector.  (<u>Id.</u> at pp. 19-20).

Plaintiff sought review of the Administrative Law Judge's decision with the Appeals Council.  The Appeals Council declined Plaintiff's request for review and rendered the ALJ's decision as the final administrative decision by the Commissioner of Social Security.  (<u>Id.</u> at pp. 1-3).

## STANDARD OF REVIEW

A claimant is disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); <u>see</u> 42 U.S.C. § 1382c(a)(3)(A); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

A decision by the Commissioner of Social Security must be affirmed by the District Court if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole.  <u>See</u> 42 U.S.C. § 405(g);

<u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>see also</u> <u>Tylitzki v. Shalala</u>, 999 F.2d 1411, 1413 (9th Cir. 1993).

## ANALYSIS

### I.   Plaintiff's Background and Work History

The Administrative Record reflects that Plaintiff was born in November 1960. (Administrative Record ("AR") at p. 162, ECF No. 17). Plaintiff has a sixth grade education and she did not complete high school. (<u>Id.</u> at p. 174). In 1996 she completed a six-month training program in sewing. (<u>Id.</u>) In 2013 she completed an English as a Second Language program. (<u>Id.</u> at p. 200).

Plaintiff performed janitorial work at Peal Harbor from 1998 to 1999. (<u>Id.</u> at p. 204). Plaintiff worked as a sewer at CC Fashion Hawaii from 1999 to 2011. (<u>Id.</u>) Between 1987 and April 2012, Plaintiff performed contract work as a seamstress.

### II.   Plaintiff's Diagnosis and Treatment for Systemic Lupus Erythematosus

13

The record indicates that Plaintiff stopped working in April 2012.  She reported she was unable to work due to pain and fatigue caused by Lupus.  Plaintiff testified that she stopped working because she could no longer perform sewing work in a timely manner.  (AR at pp. 32-36, ECF No. 17).

The record establishes that Plaintiff was diagnosed with Systemic Lupus Erythematosus ("Lupus")[1] a number of years before she stopped working in April 2012.

Plaintiff submitted her medical records starting from June 2011.  (Id. at p. 217).  Plaintiff's medical records reflect regular evaluations by two physicians, Dr. Paul Kim, a primary physician, and Dr. Scott Kawamoto, a rheumatologist.

The records reflect that both doctors diagnosed Plaintiff with Lupus, examined Plaintiff for several years, and treated various symptoms of Lupus, including joint pain, swelling, mouth sores, and fatigue.  (Id. at pp. 217, 220, 223, 226, 230, 246-47, 275-, 277, 290-91, 300-01).

A.   **Objective Medical Evidence**

1.   **Examinations by Dr. Scott Kawamoto from June 2011 to June 2014**

---

[1] Lupus is an inflammatory connective tissue disease with variable features.  It frequently includes fever, weakness, fatigue, joint pain, arthritis, and skin lesions.  Stedman's Medical Dictionary 1037 (27th ed. 2000).

14

Plaintiff provided extensive medical records from her examinations by rhematologist, Dr. Scott Kawamoto.  Over a three-year period from June 2011 to June 2014, Plaintiff was examined by Dr. Kawamoto thirteen times.  (AR at pp. 217-379, ECF No. 17).

The records state that Plaintiff suffers from Lupus. (Id. at p. 217).  Dr. Kawamoto treated Plaintiff for a number of symptoms related to Lupus including pain, swelling, and aching in Plaintiff's back, neck, hands, wrist, shoulder, ankle, hip, and thumb.  (Id. at pp. 219, 228, 230, 264, 275, 357, 361, 365).  Dr. Kawamoto's treating records indicate that Plaintiff continuously suffers from fatigue as a result of nonrestorative sleep.  (Id. at pp. 275, 357, 365).  Dr. Kawamoto also found that Plaintiff suffers from osteoarthritis.  (Id. at pp. 228, 276).

Dr. Kawamoto prescribed Plaintiff a number of medications to treat her symptoms.  Plaintiff takes Hydroxychloroquine every day to treat inflammation and joint pain caused by Lupus.  (Id. at p. 219).

Dr. Kawamoto prescribed other medications for Plaintiff to treat various Lupus flare-ups.  In September 2011, Plaintiff was prescribed Celebrex to treat inflammation.  (Id. at p. 220).  In August 2012, Plaintiff was given Tylenol to

treat knee pain.  (Id. at p. 233).

In January 2013, Dr. Kawamoto increased Plaintiff's medications.  Plaintiff was prescribed Meloxicam to treat joint pain.  (Id. at p. 276).  Dr. Kawamoto found that Plaintiff's fatigue "remains problematic" and stated that medication only offers partial, temporary improvement.  (Id.)

In September 2013, Dr. Kawamoto evaluated Plaintiff when she had an increase in Lupus symptoms.  (Id. at p. 367).  Plaintiff complained of increased pain in her ankles, wrists, knees, and shoulders.  (Id. at p. 365).  Dr. Kawamoto found that Plaintiff suffered from a Lupus flare.  (Id. at p. 367).  Dr. Kawamoto altered Plaintiff's medications.  He discontinued Plaintiff's prescription for Meloxicam and instead prescribed Etodolac for pain and inflammation.  (Id.)  Plaintiff was also prescribed Prednisone to treat inflammation.  (Id.)

Plaintiff was reluctant to take additional medications.  The record reflects that Plaintiff declined trials of medications to assist her in sleeping to be taken in addition to the medications directed at treating Lupus.  (Id. at p. 233).

### 2. Examinations by Dr. Paul Kim from April 2011 to January 2014

Plaintiff provided records from eight visits with her

primary care physician, Dr. Paul Kim, between September 2011
and January 2014.  (AR at pp. 245-47, 290-91, 300-01, ECF No.
17).  The treating records from Dr. Kim state that Plaintiff
suffers from Lupus that causes her to have pain in her
extremities and joints.  (Id. at p. 247).

On March 3, 2013, Plaintiff went to the emergency room
because she experienced abdominal pain.  (Id. at pp. 319-327).
Plaintiff's pain improved with medication at the emergency
room.  (Id. at p. 321).  Plaintiff was discharged and referred
to Dr. Kim for follow-up treatment.  (Id. at p. 324).

The following day, March 4, 2013, Dr. Kim examined
Plaintiff and provided her with medication to treat her
abdominal pain and nausea.  (Id. at p. 301).  Two days later,
on March 6, 2013, Plaintiff's pain increased and she suffered
from dizziness and vertigo.  (Id. at pp. 328-350).  Plaintiff
again went to the emergency room and was admitted to the
hospital.  (Id. at p. 328).  A scan revealed Plaintiff had a
calcified benign brain tumor that might have been the cause of
her dizziness, vertigo, and nausea.  (Id.)

Plaintiff was treated with medication to alleviate her
abdominal pain and dizziness.  (Id. at p. 329).  Plaintiff was
discharged and continued follow-up appointments with Dr. Kim.
(Id. at p. 291).

17

Plaintiff continued to seek treatment from Dr. Kim in 2013 and 2014.  (Id. at pp. 290-91).  The medical records from Dr. Kim indicate that Plaintiff continued to suffer from Lupus.  (Id.)

### 3.   Dr. Kawamoto and Dr. Kim's Medical Source Statements Made in June 2014

In June 2014, Plaintiff's treating physicians completed written assessments of Plaintiff's medical condition and her ability to work.  (AR at pp. 395-403, ECF No. 17).  The documents were entitled "Medical Source Statements."  (Id.)

### a.   Dr. Kawamoto, Treating Rheumatologist

In June 2014, Dr. Kawamoto stated that Plaintiff suffers from joint pain and stiffness in multiple joints.  (Id. at p. 395).  Dr. Kawamoto diagnosed Plaintiff as having both Lupus and osteoarthritis.  (Id.)  Dr. Kawamoto found that Plaintiff is limited in her ability to work due to her conditions.  Dr. Kawamoto determined that Plaintiff is able to sit for a maximum of 30 minutes at a time, that she needs to alternate positions by walking about, and that she is able to stand or walk for a maximum of 30 minutes at a time.  (Id.)

Dr. Kawamoto found that Plaintiff's fatigue impacts her ability to work full-time.  He indicated that Plaintiff is

18

able stand or walk for a total of two hours in an eight-hour workday.  (Id. at p. 396).

Dr. Kawamoto found that Plaintiff's complaints about fatigue were consistent with her Lupus diagnosis, that she has good days and bad days, and that there are a number of days a month that she is unable to attend work due to her Lupus condition.  (Id. at pp. 396-97).  Dr. Kawamoto stated that Plaintiff is required to be absent from work more than 3 days per month due to her condition.  Dr. Kawamoto explained that Plaintiff's medical condition causes her "severe fatigue, joint pain/stiffness/ swelling, muscle pain."  (Id. at p. 397).

Dr. Kawamoto also stated that Plaintiff needs significant breaks to relieve pain and fatigue caused by Lupus.  (Id. at p. 396).  He found that in addition to a morning break, a lunch period, and an afternoon break, Plaintiff requires additional rest periods.  (Id.)

Dr. Kawamoto stated that as of June 2014, Plaintiff was prescribed Hydroxychloroquine Sulfate, Prednisone, and Etodolac to treat her Lupus condition.  (Id. at p. 398).

### b.   Dr. Kim, Treating Primary Care Physician

Dr. Kim's assessment of Plaintiff's physical limitations

caused by Lupus is nearly identical to Dr. Kawamoto's
assessment.  Dr. Kim stated that Plaintiff's medical condition
prevents her from working full-time and forces her to be
absent more than three days of work per month.  (Id. at p.
402).  Dr. Kim agreed with Dr. Kawamoto that Plaintiff can
only stand or walk for a maximum of two hours during an eight-
hour workday.  (Id. at p. 401).

Dr. Kim stated that Plaintiff has fatigue, pain in the
extremities and joints caused by Lupus, and osteoarthritis.
(Id. at pp. 400-403).  Dr. Kim agreed that Plaintiff needs
more than three breaks per day, and specifically underlined a
finding that "more rest is needed."  (Id. at p. 401).


## II.  Plaintiff's Daily Activities Following April 2012

Plaintiff testified that she takes Hydroxychloroquine
Sulfate and Lyrica everyday and Prednisone two to three times
a week as needed to treat Lupus symptoms.  (AR at p. 39, ECF
No. 17).  Plaintiff testified she also takes ginseng every
day.  (Id.)  Plaintiff stated she does not take any sleep
medications.  (Id. at p. 40).

Plaintiff described her daily activities as limited to
brushing her teeth, eating, lying down, and some cleaning and

cooking.  (Id. at pp. 40-41).  Plaintiff testified that she
does not vacuum and only cleans her room and her bedroom, but
that her children do their own laundry and do the dishes.
(Id. at p. 41).  She stated that she sometimes helps with
folding and dishes in the summertime.  (Id.).  Plaintiff
stated that she does not cook everyday and that the family
eats take out three times per week.  (Id.)

Plaintiff explained that she does not go out to socialize
often.  (Id. at pp. 44-45).  Plaintiff testified that she is
able to drive and does some grocery shopping with the
assistance of her family members.  (Id. at p. 42).  Plaintiff
testified that when shopping she only carries small things
because carrying heavy items causes pain in her forearms and
wrists.  (Id. at p. 42).  Plaintiff stated that walking and
standing, and even sitting, for extended periods of time
causes her pain.  (Id. at pp. 42-44).

Plaintiff testified that she gets pain when she sews
because she is using both legs to push the electric pedal and
it hurts.  Her condition requires her to get up and walk
around before returning to work.  (Id. at p. 44).  Plaintiff
stated that she sometimes does small sewing tasks such as
hemming a pair of pants, but she does not regularly sew.  (Id.
at p. 45).  She testified that she has trouble gripping and

21

using a scissors when sewing.   (Id. at p. 48).

## III.        Applicable Law

The Social Security Administration has implemented
regulations establishing when a person is disabled so as to be
entitled to benefits under the Social Security Act, 20 C.F.R.
§ 404.1520; 42 U.S.C. § 423.   The regulations establish a
five-step sequential evaluation process to determine if a
claimant is disabled.   The Commissioner of the Social Security
Administration reviews a disability benefits claim by
evaluating the following:

> (1)   Has the claimant been engaged in substantial
>       gainful activity?   If so, the claimant is not
>       disabled.   If not, proceed to step two.
>
> (2)   Has the claimant's alleged impairment been
>       sufficiently severe to limit his ability to
>       work?   If not, the claimant is not disabled.   If
>       so, proceed to step three.
>
> (3)   Does the claimant's impairment, or combination
>       of impairments, meet or equal an impairment
>       listed in 20 C.F.R. Part 404, Subpart P,
>       Appendix 1?   If so, the claimant is disabled.
>       If not, proceed to step four.
>
> (4)   Does the claimant possess the residual
>       functional capacity to perform his past relevant
>       work?   If so, the claimant is not disabled.   If
>       not, proceed to step five.
>
> (5)   Does the claimant's residual functional
>       capacity, when considered with the claimant's
>       age, education, and work experience, allow him

22

> to adjust to other work that exists in
> significant numbers in the national economy?  If
> so, the claimant is not disabled.  If not, the
> claimant is disabled.

Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1052

(9th Cir. 2006) (citing 20 C.F.R. § 404.1520).

The claimant has the burden of proof at steps one through

four, and the Commissioner has the burden of proof at step

five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir.

2001).

## IV.  The Administrative Law Judge Reviewed Plaintiff's Application By Using The Five-Step Sequential Evaluation

At Plaintiff's July 14, 2014 administrative hearing, the

Administrative Law Judge ("ALJ") for the Social Security

Administration reviewed Plaintiff's claim by engaging in the

five-step sequential evaluation.

The Parties agree there were no errors in the first three

steps of the administrative review process.

The Parties disagree as to steps four and five in the

administrative review process.

At step four, the ALJ reviewed the record and made a

finding as to Plaintiff's residual functional capacity.  The

ALJ found that Plaintiff could not perform her past work but

she could perform light work with some limitations.  (AR at p.

23

15, ECF No. 17).

At step five, the ALJ inquired with the vocational expert to evaluate if there were other jobs that Plaintiff could perform.  The ALJ found that someone with Plaintiff's limitations could perform work as a Toll Collector.  (<u>Id.</u>)

Plaintiff's appeal challenges the ALJ's findings on three main issues.  <u>First</u>, Plaintiff argues that the ALJ erred by declining to credit the opinions of her treating physicians in evaluating her residual functional capacity.  <u>Second</u>, Plaintiff asserts that the ALJ erred in finding her not credible.  <u>Third</u>, Plaintiff argues that the ALJ erred by relying on the testimony of the vocational expert to find that Plaintiff could perform work as a Toll Collector.

## V.    **Remand Is Appropriate To Enable The ALJ To Property Consider The Treating Physicians' Opinions Regarding Plaintiff's Limitations**

Plaintiff challenges the ALJ's decision with respect to the residual functional capacity assessment at step four in the administrative process.

Plaintiff argues that the ALJ improperly rejected the opinions of her two treating physicians.  Plaintiff also argues that the ALJ erred in finding the Plaintiff not credible.

24

**A.   The ALJ Erred By Rejecting The Opinions Of Plaintiff's Treating Physicians**

A treating physician's opinion is entitled to the greatest weight because the treating physician is hired to examine and treat the patient over an extended period of time and has the best opportunity to assess the claimant. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Treating physicians are "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c).

An ALJ must state clear and convincing reasons that are supported by substantial evidence in order to reject the uncontradicted opinion of the treating physician.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

Plaintiff's treating physicians Dr. Scott Kawamoto and Dr. Paul Kim examined Plaintiff on more than 21 different occasions between June 2011 and June 2014.  (AR at pp. 217-379, ECF No. 17).  Both physicians have diagnosed Plaintiff with Lupus and other ailments.

The medical records reflect that Plaintiff suffers from osteoarthritis in addition to Lupus.  The ALJ recognized that Plaintiff was diagnosed with osteoarthritis and found that some of the objective medical evidence supports such a

25

diagnosis.  (<u>Id.</u> at p. 14).  The ALJ found that osteoarthritis did not last longer than 12 months and did not cause significant limitations on Plaintiff's ability to work.  (<u>Id.</u>) Plaintiff does not object to such a finding on appeal.

Plaintiff's severe impairment is Lupus.  She has suffered from Lupus for more than six years and she continues to suffer from Lupus.  Plaintiff saw her treating physicians frequently to treat Lupus and symptoms related to Lupus.  The physicians have treated Plaintiff for her varying symptoms including joint and muscle pain, aching, and fatigue.  Plaintiff takes daily Hyrdoxychloroquine medication.  She has also taken Celebrex, Meloxicam, Etodolac, Tylenol and Prednisone to treat her joint pain and inflammation.

The nature of the Plaintiff's diagnosis is relevant in this case.  The Ninth Circuit Court of Appeals has recognized the difficulty of diagnosing Lupus, which has been known to require continuous reevaluation by doctors when new symptoms develop.  <u>Poppa v. Comm's of Soc. Sec.</u>, 1999 WL 1048664, *3 (9th Cir. 1999).  In cases involving Lupus diagnoses, "it is particularly critical that the ALJ consider a treating physician's opinion and Plaintiff's own SLE [Systemic Lupus Erythematosus]-induced pain and fatigue complaints."  <u>Garcia v. Colvin</u>, 2015 WL 7573653, *8 (C.D. Cal. Nov. 25, 2015)

26

(internal citation and quotation marks omitted).

In June 2014, both of Plaintiff's treating physicians completed Medical Source Statements for the Social Security Administration.  The Medical Source Statements are provided to explain Plaintiff's physical limitations caused by Lupus.  (AR at pp. 395-403, ECF No. 17).  Both Dr. Kawamoto and Dr. Kim agree that the following three limitations impair Plaintiff's ability to work due to Lupus and Lupus symptoms:

> (1)   Plaintiff is unable to stand or walk more than two hours in an eight-hour workday;
>
> (2)   Plaintiff requires more than three breaks during an eight-hour work day; and,
>
> (3)   Plaintiff's condition causes her to be absent more than three workdays a month.

(Id.)

The ALJ did not credit the three limitations identified by Plaintiff's treating physicians when evaluating Plaintiff's residual functional capacity.  The ALJ rejected the treating physicians' opinions and instead found that Plaintiff is able to stand or walk for six hours in an eight-hour workday.  (Id. at p. 15).  The ALJ's finding is in contrast to the two hours maximum that Plaintiff's treating physicians stated she could stand or walk.  The ALJ also did not credit the rest breaks and days off work limitations identified by the treating physicians in her order.  (Id.)

According to the ALJ, she rejected the opinions of Dr.
Kawamoto and Dr. Kim for three reasons.  <u>First</u>, she stated
that she did not agree with the treating physicians'
assessments because of the sedimentation rate in the clinical
tests.  (<u>Id.</u> at p. 18).  <u>Second</u>, the ALJ stated that she
rejected the treating physicians' assessments because of "the
efficacy of the medication [Plaintiff] is taking."  (<u>Id.</u>)
<u>Third</u>, the ALJ instead relied, partially, on the opinion of a
non-treating State agency physician.  (<u>Id.</u>)

> **1.   The ALJ's Individual Assessment Of Plaintiff's
> Sedimentation Rate Is Not Sufficient To Reject
> The Opinions Of Plaintiffs' Treating Physicians**

According to the medical websites offered by Plaintiff, a
sedimentation rate test is a blood test that measures how
quickly red blood cells settle in a test tube in one hour.
(Supplement at Ex. 1, ECF No. 28-1).  The test may reveal
progress in inflammatory diseases.  (<u>Id.</u>)  Sedimentation rates
increase with more inflammation because red blood cells have
higher amounts of protein and fall more rapidly when there is
inflammation in the body.  (<u>Id.</u>)

Plaintiff's medical records reflect that her
sedimentation rate was regularly tested by her treating
physicians between June 2011 and June 2014.  Plaintiff's

28

sedimentation rate results ranged from a 3 to 5.  (AR at pp. 219, 223, 225, 228, 264, 359, 363, 369, ECF No. 17).

The ALJ relied on the sedimentation rate test results contained in Plaintiff's medical records to reject the opinions of Plaintiff's treating physicians.  (Id. at p. 17). Plaintiff challenges the ALJ's reliance on the results of her sedimentation rate tests.  (Opening Brief at pp. 17-19, ECF No. 22).

Plaintiff argues that sedimentation rate tests alone are not used by physicians to diagnose or assess Lupus.  Plaintiff asserts that "established medical literature explains that [erythrocyte sedimentation rates] are not useful when evaluating the severity of Lupus symptoms."  (Reply at p. 3, ECF No. 26).  Plaintiff asserts that the ALJ erred in relying on the sedimentation rate data because the test is limited to evaluating inflammation and does not assess any other Lupus symptoms.

Plaintiff cited to documents from the Mayo Clinic and John's Hopkins Lupus Center.  (Reply Brief at p. 3, ECF No. 26; Supplement, ECF No. 28).[2]  The Mayo Clinic states that

---

[2] Plaintiff cited to the following websites:
(1)   Mayo Clinic Online,
      http://www.mayoclinic.org/tests-procedures/sed-rate/
      home/ovc-20207006 (last visited, January 17, 2017).

"diagnosing lupus is difficult because signs and symptoms vary considerably from person to person." (Supplement at Ex. 2, ECF No. 28-2).  The Mayo Clinic website provides that sedimentation rate tests are not necessarily helpful in evaluating Lupus because an elevated rate can be indicative of any inflammatory condition, cancer, or an infection, and sedimentation rate tests do not test for any one specific disease. (Id.)

The John's Hopkins Lupus Center states that the sedimentation rate test "does not tell your doctor exactly where the inflammation is occurring in your body and is thus not a very strong indicator of lupus activity." (Supplement at Ex. 1, ECF No. 28-1).

In her written decision, the ALJ found that Plaintiff's sedimentation rate data was inconsistent with the treating physicians' assessment of Plaintiff and the Plaintiff's own testimony about the severity of her symptoms. (AR at p. 17, ECF No. 17).  The ALJ stated that she believed Plaintiff's sedimentation rate should have been higher and should have increased when she experienced more severe Lupus symptoms.

_____

(2)  John's Hopkins Lupus Center, http://www.hopkinslupus.org/lupus-tests/clinical-tests/erythrocyte-sedimentation-rate-esr/ (last visited, January 17, 2017).

(Id.)

Plaintiff argues that the ALJ improperly substituted her own lay opinion as to the significance of the sedimentation rate data instead of relying on the treating physicians' expert opinions.

Both of Plaintiff's treating physicians were aware of Plaintiff's sedimentation rate test results over the three year examination period from June 2011 to June 2014. Neither of the treating physicians found that Plaintiff's sedimentation rate results were inconsistent with Plaintiff's complaints, physical symptoms, or Lupus diagnosis.

The ALJ made her own assessments of the raw medical data and found the results of Plaintiff's sedimentation rate tests significant, but she provided no explanation as to the basis for her conclusions. The ALJ's decision never explained the nature or purpose of a sedimentation rate test. The ALJ did not provide any information in her decision to explain what a sedimentation rate is, what it tests, how it is viewed, and what it means in the context of other rates or scores.

Courts in the Ninth Circuit Court of Appeals jurisdiction have repeatedly found that an ALJ may not reject the opinion of a treating physician based on his or her own interpretation of raw medical data. Tackett v. Apfel, 180 F.3d 1094, 1102-03

31

(9th Cir. 1999) (the ALJ may not substitute his own
interpretation of the medical evidence for the opinion of
medical professionals); see Orn v. Astrue, 495 F.3d 625, 632
(9th Cir. 2007); Banks v. Barnhart, 434 F.Supp.2d 800, 805
(C.D. Cal. 2006); Ceja v. Colvin, 2013 WL 5492046, *9 (C.D.
Cal. Sept. 30, 2013).

The ALJ's rejection of the opinions of Plaintiff's
treating physicians based on the sedimentation rate is not
supported by clear and convincing evidence.

**2.  The ALJ's Individual Assessment Of The Efficacy
    Of Plaintiff's Medications Is Not Sufficient To
    Reject The Opinions Of Plaintiffs' Treating
    Physicians**

The ALJ also evaluated Plaintiff's medical records as to
the efficacy of her medications.  (AR at p. 17, ECF No. 17).
The ALJ stated:

> The claimant's treatment records also indicate the
> treatment helps minimize the symptoms of her
> impairment.  As noted above, medications, including
> over-the-counter Tylenol, seem to help with her pain
> and swelling.  There is no indication from the
> record that she is receiving any more significant
> pain medication than this, or other treatment
> modalities designed to ameliorate her pain.

(Id.)

The record conflicts with the ALJ's assessment.  The
record demonstrates that Plaintiff has taken a variety of

32

different pain medications between June 2011 through June 2014 that are stronger than over-the-counter Tylenol.  Plaintiff was prescribed Hydrochloroquine Sulfate, Meloxicam, Prednisone, and Etodolac for joint pain and aching at various points due to Lupus flares.  (Id. at pp. 365-66).  During Plaintiff's hospitalization in March 2013, Plaintiff was provided with Morphine and Lidocaine to treat pain.  (Id. at p. 321).

The ALJ's assessment as to the efficacy of the Plaintiff's medications is not supported by clear and convincing evidence for rejecting Plaintiff's treating physicians' opinions.  Smith v. Colvin, 2016 WL 4059627, *3-*4 (C.D. Cal. July 27, 2016); Ceja, 2013 WL 5492046, at *9.

### 3. The ALJ's Reliance On Non-Treating Physician Evaluation Is Not Sufficient To Reject The Treating Physicians' Opinions

The ALJ also found that the opinion of the State agency reviewing physician, Dr. Alan Coleman, conflicted with the opinions of Dr. Kim and Dr. Kawamoto.  (AR at p. 18, ECF No. 17).  Dr. Coleman determined that Plaintiff's medical records demonstrated that she could conduct light work with postural restrictions.  (AR at p. 84, ECF No. 17).

In some instances, a nonexamining physician may review

33

the claimant's medical records to assist the ALJ in his or her assessment of the claimant's residual functional capacity.  An ALJ may not rely on the opinion of a nonexamining physician alone to reject the opinion of the treating physician as to the severity of the claimant's impairments.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

Dr. Coleman's opinion was not based on his own clinical findings but on a review of Plaintiff's treatment records from other physicians.  The ALJ was required to provide specific and legitimate reasons for discounting the treating physicians' opinions in favor of Dr. Coleman's opinion. Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ did not provide specific and legitimate reasons for supporting Dr. Coleman's opinion over that of Plaintiff's treating physicians Dr. Kim and Dr. Kawamoto.  Rohrbacher v. Colvin, 2015 WL 1006678, *5-*6 (C.D. Cal. March 5, 2015). Courts in the Ninth Circuit Court of Appeals' jurisdiction have found that it may be error for the ALJ to rely on a non-treating physician's opinion when a claimant is diagnosed with Lupus.  Johnson v. Astrue, 2008 WL 5103230, *4 (C.D. Cal. Dec. 2, 2008).  Although Lupus symptoms vary from day-to-day and may go into remission, the treating physicians are in the best possible position to provide information as to the claimant's

34

physical limitations and ability to work.   Id.

Here, the ALJ's reliance on the opinion of Dr. Coleman is misplaced.   The ALJ herself found that some determinations of Dr. Coleman were inconsistent with the record as a whole.   The ALJ discredited part of Dr. Coleman's evaluation, finding Plaintiff was "more impaired than this due to her fatigue." (AR at p. 18, ECF No. 17).   The ALJ's rejection of the opinions of Plaintiff's treating physicians is not supported by the record.

**B.    The ALJ Erred By Failing To Provide Clear and Convincing Reasons To Reject The Plaintiff's Testimony As To The Severity Of Her Symptoms**

An ALJ may discredit the claimant's testimony about the severity of her symptoms by offering specific, clear and convincing reasons for doing so.   Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ may consider many factors in weighing a claimant's credibility, including evaluating inconsistent statements concerning the claimant's symptoms against evidence of the claimant's participation in daily activities.   Id. at 1039.

The ALJ's credibility findings must be sufficiently specific to permit the court to conclude that the ALJ did not

arbitrarily discredit the claimant's testimony.  <u>Thomas v.</u> <u>Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002).

In this case, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible for the reasons explained in this decision."  (AR at p. 17, ECF No. 17).

### 1.   Sedimentation Rate Test

One basis that the ALJ provided for discrediting the Plaintiff's testimony was the sedimentation rate in the clinical findings.  (<u>Id.</u>)

The weight given by the ALJ to the sedimentation rate test is not established by information in the opinion.  The Plaintiff has raised questions as to the appropriateness of relying on the sedimentation rate test through information provided by the Mayo Clinic and John's Hopkins Lupus Center. (Reply Brief at p. 3, ECF No. 26; Supplement, ECF No. 28).

The ALJ's own interpretation of the medical data does not provide clear and convincing evidence for discrediting Plaintiff's testimony as to the severity of her symptoms.

Tackett, 180 F.3d at 1102-03.

## 2.   Daily Activities

The ALJ also found the Plaintiff not credible based on her testimony as to her participation in daily activities. (AR at p. 18, ECF No. 17).  Plaintiff testified to very limited participation in daily activities and explained that fatigue and pain interfered with her minimal cooking, sewing, and carrying groceries.  (Id. at pp. 39-45).

A claimant's ability to complete household activities does not preclude a finding of disability.  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).  The Ninth Circuit Court of Appeals has stated that it "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." Id.  A claimant does not need to be "utterly incapacitated" in order for the ALJ to find the claimant disabled.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

The Court here does not find Plaintiff's testimony about her engagement in limited daily activities to be inconsistent with her testimony about the severity of her symptoms.  Webber

37

v. Astrue, 305 Fed. Appx. 311, 313 (9th Cir. 2008); Reinertson

v. Barnhart, 127 Fed. Appx. 285, 288 (9th Cir. 2005).  The

ALJ's adverse credibility determination is not supported by

the record.  Orn, 495 F.3d at 639.

### C.   The ALJ Erred By Finding That Plaintiff Can Perform Work as a Toll Collector

The ALJ relied on the testimony of the vocational expert

to find that there are jobs that exist in significant numbers

in the national economy that the claimant can perform.

Specifically, the ALJ found that someone with Plaintiff's

limitations can perform work as a Toll Collector.  (AR at pp.

19-20, ECF No. 17).

On appeal here, Plaintiff challenges the ALJ's reliance

on the testimony from a vocational expert to find that

Plaintiff can perform work as a Toll Collector.

Plaintiff's treating physicians stated that she is only

able to stand or walk for a maximum of two hours in an eight

hour workday.  The ALJ did not credit the treating physicians'

assessments.  The ALJ presented a hypothetical to the

vocational expert stating that Plaintiff is able to stand or

walk for six hours in an eight hour workday.

The vocational expert was not presented with a

hypothetical consistent with findings of Plaintiff's treating

physicians.  The vocational expert's testimony relied on a
residual functional capacity that was not supported by
substantial evidence.

The ALJ's reliance on the vocational expert to find that
there are jobs that exist in significant numbers in the
national economy is not supported by substantial evidence.

### D.    Remand Is Necessary

The ALJ did not provide sufficient reasoning to reject
the opinions of Plaintiff's treating physicians.  The ALJ also
did not support her finding that the Plaintiff was not
credible.  As a result, the ALJ's residual functional capacity
assessment is not supported by substantial evidence.  Smith,
2016 WL 4059627, at *3-*4 (citing Penny v. Sullivan, 2 F.3d
953, 956 (9th Cir. 1993); Winters v. Barnhart, 2003 WL
22384784, *6 (N.D. Cal. Oct. 15, 2003).

The decision to remand for further proceedings or order
an immediate award of benefits is within the district court's
discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir.
2000).  It is appropriate to direct an award of benefits when
there is no useful purpose in further administrative
proceedings or where the record has been fully developed.  Id.
at 1179.

Here, remand is necessary.  The record needs further development.  The agency shall develop the record further to evaluate the medical evidence and the opinions of the Plaintiff's treating physicians.  Remand is appropriate because the record does not support the ALJ's findings.  <u>Id.</u> at 1179-81.

On remand, the ALJ shall determine if Plaintiff is disabled.  20 C.F.R. § 404.1520.  It has been determined that Plaintiff cannot perform her past work.  The ALJ shall assess Plaintiff's residual functional capacity to perform any other work that exists in significant numbers in the national economy.  <u>Garrison v. Colvin</u>, 759 F.3d 995, 1021 (9th Cir. 2014); <u>Rohrbacher</u>, 2015 WL 1006678, at *6.


## **<u>CONCLUSION</u>**


The Commissioner of Social Security Administration's decision is **REVERSED AND REMANDED** for further proceeding

//

//

//

//

//

consistent with this Order.

IT IS SO ORDERED.

DATED: January 27, 2017, Honolulu, Hawaii.

Helen Gillmor
United States District Judge